**Teri LYONS, Plaintiff–Appellant,**

**v.**

**Willie WILLIAMS, Police Chief; Daryl Gates, Former Police Chief of LAPD; Bernard Parks; Maurice Moore; Dan Miller; Connie L. Castruita; Maurice Moore, Defendants–Appellees.**

No. 94–55454.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1996.

Decided Aug. 2, 1996.

---

Stephen Yagman, Marion R. Yagman, Yagman & Yagman, Venice, California, for plaintiff-appellant.

Barry Levin, James K. Hahn, Frederick N. Merkin, George R. Lomeli, Los Angeles, California, for defendants-appellees.

Before: BEEZER, BRUNETTI, and JOHN T. NOONAN, Jr., Circuit Judges.

JOHN T. NOONAN, Jr., Circuit Judge:

Teri Lyons appeals the judgment of the district court in her civil rights action under 42 U.S.C. § 1983 against Maurice Moore, an officer of the Los Angeles Police Department (LAPD), the City of Los Angeles and seventeen officials of the city. The heart of her appeal is the argument that the burden of proof in a civil suit alleging rape should be on the defendant to prove consent. Rejecting this novel contention, we affirm the district court.

*FACTS*

Lyons has been an officer of the LAPD since 1982. She had been engaged largely in narcotics work and in 1991 was a member of the DARE Division, where she taught the DARE anti-drug program to elementary and junior high school children and trained other DARE officers. Toward the end of 1991 and the beginning of 1992, she had difficulties with her supervisor, was forced out of the training team and was limited to teaching in the schools. During the same period she had problems with her husband, who was also an officer in the LAPD.

In this period, late 1991 to early January 1992, she began telephoning anonymously an assistant chief of police in the Operations Central Bureau of the LAPD. The primary topic of the calls was her concern about her career. In March 1992 one of her calls was intercepted by Maurice Moore, with whom she also discussed her career problems. Moore was a 33–year veteran of the LAPD with the rank of Commander. A week later Lyons called Moore again and told him that her aunt and uncle knew him and that he might guess who she was. She then talked to him about her marital problems. Moore encouraged her to see the LAPD psychiatrist. Lyons called Moore a third time. Moore told her that he would feel more comfortable talking to her in person at his apartment. She got his home telephone number from her aunt.

By mutual agreement, after work on the evening of March 31, 1992, Lyons met Moore at his apartment building and accompanied him to the living room of his apartment. He discussed the problems he was having with his wife, from whom he was separated. She discussed her marital problems. After some period of conversation they entered Moore's bedroom and engaged in sexual intercourse. After Lyons left the apartment they never had a conversation again. The next day, however, Moore left the name and number of a family counselor on Lyons's voice mail. According to Moore, Lyons left six messages on Moore's recorder, each stating, "I was thinking about you" or words to that effect.

In April 1992, Lyons again telephoned the assistant police chief at the Operations Con-

trol Bureau and talked anonymously with him about her career and her marital problems. This officer was Moore's superior, but she did not mention Moore. In November 1992, she again telephoned the assistant police chief, revealed her name, and asked if they could meet. No meeting, in fact, took place, and no mention was made of Moore. Later in the month Lyons told a field supervisor in the DARE Division that she was under stress, that she was dissatisfied with her job, and that Moore had taken advantage of her vulnerability and that she felt like she had been raped. This conversation was reported to the supervisor's superior. The same day she was interviewed on the subject of the alleged rape at a police station. The LAPD then investigated her allegations. Moore admitted that he and Lyons had engaged in intercourse but denied that he had raped her.

### PROCEEDINGS

On December 17, 1992, Lyons filed a complaint in federal court alleging in count 1 that, in violation of the Fourth Amendment as incorporated by the Fourteenth Amendment, she had been subjected to the use of excessive force by Moore; in count 2 that she had been deprived of her rights to due process; and in count 3 that she had been "physically raped and thereby illegally assaulted and battered." She sought general damages in the sum of $10 million and punitive damages in the sum of $10 million. Named as defendants were Moore, the City of Los Angeles and seventeen officials of the City of Los Angeles who were alleged to have taken no action to investigate the reported rape or to discipline Moore.

The district court bifurcated the action and permitted the case against Moore and the city to go to a jury trial that lasted five days. In addition to her own testimony that she had not consented to intercourse, Lyons presented as witnesses Moore, who was adverse, and, as an expert witness, Kathleen M. Bartle–Schulweis. Bartle–Schulweis had a bachelor's and master's degree in sociology from the University of California at Los Angeles and a degree in business from the University of Southern California. At the time of trial she was finishing a doctoral dissertation at UCLA on the subject of sexual harassment. She held a certificate from the Rosa Parks Sexual Assault Crisis Center, certifying that she had participated in a one week course in rape counselling. She testified that she had "worked with over 400 rape survivors," that is, persons saying that they had been raped. Bartle–Schulweis assumed that the persons complaining to her were telling the truth. She had never done any studies as to the false reporting of rape. She had published no scholarly study on acquaintance rape or rape in general. She was not a psychologist. The defense challenged her qualifications to be an expert in the case. The court observed that her qualifications were "minimal," but agreed that she could testify as an expert to reluctance and delay in reporting acquaintance rape.

Lyons sought to obtain Bartle–Schulweis's answers to 142 questions relating chiefly to the reaction of rape victims to the trauma they had undergone. The court found only two of these questions to be relevant and within Bartle–Schulweis's expertise and permitted these questions only. The principal question permitted was: whether women who were the victims of acquaintance rape are more likely to make delayed or late reports than women who were victims of stranger rape. Bartle–Schulweis testified that they were.

Lyons submitted an instruction on consent that read as follows:

Consent must be voluntary and not the result of coercion. Defendant Moore has the burden of demonstrating that consent to the sexual intercourse was voluntary. However, as to plaintiff Lyons' claim under federal law, that Moore allegedly violated Lyon's federal right, as defined in these instructions, plaintiff Lyons at all times has the ultimate burden of proving to the jury that defendant Moore violated that right and acted under color of law. Plaintiff Lyons does not have the ultimate burden as set forth in the immediately preceding sentence of this instruction, with respect to her separate claim under State law that Moore committed a sexual battery against plaintiff Lyons, and plaintiff Lyons

is entitled to a verdict in her favor on her State law claim unless defendant Moore proves plaintiff Lyons voluntarily consented to the admitted sexual intercourse.

The court declined to give this instruction. As to the federal civil rights claim, the court charged that Lyons must prove:

First, the defendant had sexual intercourse with plaintiff without the consent of plaintiff.

Second, that the defendant then and there acted under color of authority of the state or local law.

Third, that the defendant's acts were the proximate cause of injuries or damages sustained by the plaintiff.

As to the battery, the court charged that Lyons must prove:

As to the state law claim, plaintiff has the burden of establishing by a preponderance of the evidence the three essential elements for a claim of battery.

First, that the defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person.

Second, that the plaintiff did not consent to the contact.

Third, the harmful or offensive contact caused injury, damage, loss or harm to the plaintiff.

The jury returned a verdict for Moore. The court entered judgment for Moore and for the city. On April 11, 1994, the court granted summary judgment for the seventeen city officials, finding that Lyons had not produced any evidence that supported their liability as individuals or in an official capacity.

Lyons appeals.

## ANALYSIS

### The Instruction On Consent

■ Lyons argues that consent is an affirmative defense to a charge of rape, and, therefore, the district court erred in placing the burden of proof as to consent on her. This argument misconceives her case. In every action alleging an unlawful touching of one's person the lack of consent to the touch-

ing is part of the plaintiff's case. "[T]he absence of consent is a matter essential to the cause of action [of battery], and it is uniformly held that it must be proved by the plaintiff as a necessary part of [her] case." *Restatement (Second) of Torts* § 13 cmt. d (1965). What is true of ordinary battery is equally true of the gross, intimate and odious touching against one's will that constitutes rape. For that reason, the standard jury instructions for criminal rape in California require the prosecution to prove that "the act of intercourse was against the will" of the alleged victim. CALJIC 10.00 (1995). Where an act of rape forms part of a civil cause of action, the nature of the act to be proved is not altered. What the plaintiff has to show is intercourse against her will or without her consent. The burden is hers. The tort analogous to rape in California is sexual battery. Cal.Civ.Code § 1708.5 (West 1996). Proof of it requires that "plaintiff did not consent to the contact." BAJI No. 7.56 (8th Ed.1994). A fortiori, where the alleged rape was the centerpiece of a claimed violation of civil rights, it was the burden of the plaintiff to prove every element of the alleged violation. The district court accurately so charged the jury.

### The Limitation on the Expert's Testimony

■ Bartle–Schulweis was accepted as an expert on a very narrow subject: the reporting of acquaintance rapes. It is not entirely clear that she was qualified to be an expert on this subject since no evidence was offered as to her knowing whether the rapes she said were delayed in their reporting had actually taken place or were merely the allegations of the victim; she assumed that the allegations were true and had no experience of observing the false allegation of rape. In any event, she was permitted to testify as to the phenomenon of delay in such reports and in this way bolstered the credibility of Lyons. There were a large number of other questions that she was not permitted to answer such as: "Do rape trauma systems cause tremendous disruption in the victim's life?" "Is it true that rape victims often say 'I feel like I'm going crazy.'" And, "Do eventually, almost all victims move into another stage

**1312**

characterized by acute distress?" The relevance of these questions has not been shown, nor has Lyons pointed to any prejudice resulting from the district court's refusal to permit examination on these points.

*Execution of Moore's Invocation of the Privilege Against Self Incrimination*

 In the first stage of the police investigation of his conduct, Moore invoked the privilege against self-incrimination. Ten days later he fully answered all interrogatories in the investigation and testified fully at his deposition in this case. The district court did not err in excluding as more prejudicial than probative evidence of his initial invocation of the privilege.

*Other Questions*

Defense counsel was instructed in limine not to ask Lyons about her marital problems. He did ask her to relate the conversation with Moore in which the two of them discussed their respective marital problems. Lyons had already repeatedly testified about these problems on direct examination by her own counsel. The door to cross-examination on the conversation had been opened.

A single question, "It is true, is it not, that your aunt in fact denied providing to you defendant Moore's telephone number," was not proper when there was no evidence that the aunt did deny providing it. The court admonished the jury to ignore this question and response. The question was not harmful.

Lyons objected to the presence in the courtroom of Connie Castruita, a defendant and an investigator for the defense who had conducted a number of interviews with Lyons. Counsel stated that Castruita would testify only if "it becomes necessary to impeach something that Teri Lyons told Miss Castruita." It was not an abuse of discretion to permit her to remain in the courtroom.

*The Judgments for the City and its Officials*

Lyons presented no evidence before summary judgment against her that the particular officials had authorized or approved a policy to deprive a person of rights against rape by a police officer. The verdict for Moore removed any possible liability of the city.

**AFFIRMED.**